## Northern Central Railway Co., Appellant, *v.* Harrisburg & Mechanicsburg Electric Railway Company and the Cumberland Valley Traction Company.

*Street railways—On public highways only—Act of May 14, 1889.*

Under the act of May 14, 1889, P. L. 211, street railway companies, in the selection or adoption of the route either of their main line, or of any extension or advance thereof, are expressly confined to established streets or other avenues in cities and boroughs and to public highways in townships, subject to such further restrictions, even as to them, as are specified in the act. The legislature did not intend to give such companies a roving commission under which they might assert the right to locate, construct and operate street railroads wherever they pleased.

*Street railways—Highways—Railroads—Crossings—Act of May 14, 1889.*

Under the act of May 14, 1889, a street railway company has no right to construct, maintain and operate its road across the lines of a steam railroad company without the consent and against the protest of the latter at a point where its roadway is not crossed by a public highway.

Section 18 of the act of May 14, 1889, which gives authority to street railway companies to "cross at grade, diagonally, or transversely any railroad operated by steam or otherwise," is only applicable to crossings at points where the railroad is crossed by street or highway on which the street railway is located.

*Railroads—Right of way—Equity—Crossings.*

While the interest which a railroad company has in its right of way cannot be called a fee, it is a species of title that has some of the incidents of an estate in land, and is such an interest as may be subject to special injury, and gives the railroad company a standing in a court of equity to restrain a street railway from constructing its road across the railroad at a point other than the crossing of a highway.

*Railroads—Street railways—Overhead crossings—Equity.*

The construction by a street railway company of an overhead bridge one hundred feet or more in length, for the operation of electric cars, at a point where there has never been an overhead or grade crossing before,

is such an appreciable increase of danger to the operation of the railroad as will give the railroad company a standing in equity to resist the threatened invasion of its rights.

Argued Feb. 6, 1896.    Appeal, No. 151, Jan. T., 1896, by plaintiff, from decree of C. P. Cumberland Co., Feb. T., 1895, No. 1, dismissing bill in equity.    Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.    Reversed.

Bill in equity for an injunction to restrain a street railway company from building an overhead crossing over a railroad. Before BIDDLE, P. J.

For a full statement of facts, and in order to avoid repetition, the finding of facts and of law by the court below in Cumberland Valley R. R. v. Harrisburg etc. Ry., 177 Pa. 155 (next succeeding case) are given entire in this case, as follows :

1. The plaintiff owns and operates a railroad extending from Harrisburg in Pennsylvania to the Potomac river in Maryland. The road runs westwardly from Harrisburg to the village of Bridgeport in East Pennsboro township in Cumberland county, upon a bridge across the Susquehanna river, and upon the viaduct in said township the track is carried upon girders, twelve feet or more above the ground, supported on stone piers.

2. When the road was originally built there were six open spans between the piers, but many years ago the two western spans were filled up and have since been a solid embankment. The present four open spans range in length from thirty-two to forty feet and there is an old retaining wall on the south side of the two which are nearest the bridge.    There is also a retaining wall on the north side of the easternmost span.    These walls held an earth embankment on which horses, cattle, wagons, etc., entered the bridge in the early days when it was a " double decker."    In the year 1850 this kind of travel on the bridge was discontinued.

3. The plaintiff was incorporated and built a bridge, with an abutment and viaduct in East Pennsboro township at their present location, prior to the year 1839, the entry on the land being presumably under a parol license from the owners.    Valentine Hummel and M. Lebkicker, as tenants in common, held at that time the fee to the land over which the road ran from the west bank of the river for a distance of half a mile, and on

April 27, 1839, in consideration of $2,250 then paid to them, they released to plaintiff "all damages occasioned by the construction or use of the said road and the bridge over the Susquehanna, so far as the same runs through their land on the west side of the Susquehanna" etc.

4. The bridge has since been rebuilt and the piers reconstructed, but they occupy the same ground upon which they were placed at the time the road was built.

[The singular defendant is used by the court to designate the Harrisburg & Mechanicsburg Railway Co.]

5. Prior to the time the bill was filed, the defendant surveyed the route for its railway under the span next to the easternmost one of the plaintiff's viaduct, and had laid a few rails near to the same with the intention of building its line as thus laid out. It would not have been possible to so construct the railway, without tearing away and removing a part of the retaining wall which stands on the south side of the span, and which at that place is about five feet in height.

6. Shortly before the trial, the route of the railway was changed to run under the westernmost span of the viaduct, on the bed of an old turnpike, now abandoned.

7. The defendant was chartered on May 17, 1892, under the provisions of the street railway act of May 14, 1889, to construct a line from Market square in Harrisburg to the borough of Mechanicsburg in Cumberland county, a distance of about nine miles. The line was subsequently extended and amended to run also to the borough of New Cumberland, about two miles down the river from the People's bridge, and to the village of West Fairview, about two miles up the river from that point.

8. On October 11, 1895, a resolution was adopted both by the directors and the stockholders of the defendant company to abandon all of the line except that portion which was in the city of Harrisburg, upon the People's bridge, in the borough of New Cumberland, and in certain designated parts of the townships of East Pennsboro and Lower Allen. Prior to this time it was designed to run in other portions of said two townships, also in the townships of Upper Allen and Hampden, and in the boroughs of Shiremanstown, Camp Hill and Mechanicsburg. The consent of the authorities of Mechanicsburg had been given to construct the line in that borough, but the right to do so

expired.   The consent of the authorities of the borough of Shiremanstown and the townships of Hampden and Upper Allen was never obtained.

9. A copy of the resolutions of abandonment, with paper attached showing the consent thereto of the local authorities of the townships of East Pennsboro and Lower Allen and of the borough of New Cumberland, was filed in the office of the secretary of the commonwealth on October 21, 1895.   Certified copies of resolutions adopted by the respective councils of the city of Harrisburg and the borough of Camp Hill, giving similar consent, were filed in the said office on October 21, 1895.

10. So far as the evidence has disclosed, the building of defendant's railway and the running of cars thereon will not injure or affect the operation of plaintiff's railroad, or inflict upon plaintiff any actual damage.   There will be no increase of danger from accident or other cause.

11. The line is located upon public highways except that, for several hundred yards, it runs on private lands, with the consent of the owners.   Part of this distance is alongside of a turnpike, and by using the private lands good crossings are obtained, not at grade, of the plaintiff's road and of the Northern Central Railway.

12. The consent of the abutting landowners on the roads over which the line is built, or now authorized to be built, has been obtained.

13. That portion of the line which extends from Market square, in Harrisburg, to the village of West Fairview, a distance of three miles, was constructed and in operation in February, 1895, about six months before the amended bill was filed.

14. The Cumberland Valley Traction Company is not a party in interest.

### FINDINGS OF LAW.

1. Plaintiff has an easement upon the surface of the ground over and along which the viaduct is erected, with a prima facie right to place piers or an embankment thereon if necessary or desirable for the proper operation of its road, but this right must be exercised with a due consideration for such conflicting rights as may exist in the commonwealth or its grantee or the public.

2. The fact that defendant's railway runs for a distance on

VOL. CLXXVII—10

private lands is not a violation of its franchises but is in strict accordance with them.

3. The proceedings to abandon certain portions of the line were regular and were effective to accomplish the result which was desired. It was not necessary to obtain the consent to the abandonment of the authorities of the boroughs of Mechanicsburg and Shiremanstown, or of the townships of Hampden and Upper Allen.

4. The plaintiff has no standing to question the validity of defendant's franchises.

5. The defendant has a right to build its road across the easement of plaintiff at the place intended.

### OPINION OF THE COURT.

In addition to above findings of fact and of law we will say generally of the case in hand as follows : A street railway company, incorporated under the act of May 14, 1889, is not invested by its charter alone with authority to build an intended road, but it must likewise have the consent of the local authorities of each of the districts through which the line will pass. When such consent has been given the construction may lawfully proceed, and any person who will be injured by the building of the railway on a country highway over his land may protect himself by an injunction until his damages have been paid or secured. As the occupancy by a street railway of a country road imposes an additional servitude upon the land the abutting owner is an interested party and has a right to damages : Penna. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62.

What is the status of the plaintiff in this case? At the time the bill was filed, and until recently, the defendant's line was projected to run through the old retaining wall on the south side of the plaintiff's viaduct, and rails were laid to a near-by point. This wall belongs to plaintiff and the defendant had no authority to remove or break into it until damages were arranged according to law. At the trial defendant filed an amended answer and put in evidence certified copies of records showing an abandonment of portions of its line and a change in the route at the place in dispute, and further proved that the place of crossing the plaintiff's right of way by the line as amended is through the westernmost span of the viaduct on the bed of the

old New Cumberland turnpike. This span has been open for travel since the railroad was built nearly sixty years ago, and there is no evidence tending to show that it will ever be necessary or desirable for the proper prosecution of plaintiff's business to close it. Defendant clearly has a right to construct its line across the plaintiff's easement at this point, and as the proposed crossing is not at grade, no special order on the subject is necessary at this time. The franchises of a corporation may be taken in whole or in part, or even destroyed, in the exercise of the right of eminent domain by the commonwealth: Article 16, section 3, of the constitution; In re Towanda Bridge Company, 91 Pa. 216; In re Twenty-second street, 102 Pa. 108.

In considering the right of one company to condemn and use the property of another company, it makes no difference which is the elder. If the elder one has exercised its power to condemn property for a right of way, and has constructed and is operating its road, that does not withdraw its right of way from the liability to be condemned for a crossing, to be enjoyed in common with a junior company. The right to cross is equal, and does not arise out of purchase. When the younger corporation has acquired its right of property in common with the elder in a crossing, they become joint and equal owners, bound by mutual obligations to each other and to the public to so use this common right as to do no unnecessary harm to each other or to the public: 1 Wood's Railway Law, p. 680. The defendant having obtained from the commonwealth and the local authorities the right to build its road along the route selected, such right cannot be questioned by the plaintiff.

The act of May 14, 1889, expressly gives to companies incorporated thereunder authority to cross any railroad at grade, from which the authority to cross above or beneath the same is readily inferable, and as said above, the right of defendant to construct its line, upon the route selected, cannot be called in question by the plaintiff: Market Co. v. Railroad Co., 142 Pa. 580; Junction P. Ry. v. Williamsport P. Ry., 154 Pa. 116.

The position is taken that defendant was without authority to change the place of crossing from the line indicated by the rails which were laid near the viaduct, it being claimed that the laying of these rails was the adoption of a location from which there could be no recession. We know of no doctrine to sup-

port this proposition. It is true the law is settled, that as soon as a steam railroad is located, the right of an injured landowner to sue for damages is complete, and he may recover damages not only for the location but for the subsequent construction: Wadhams v. Railroad Co., 42 Pa. 303 ; Beale v. Railroad Co., 86 Pa. 509. It does not follow from this, however, that the route of a small portion of the line may not be changed before actual construction, if deemed expedient, but the rule merely signifies that the owner of the land traversed by the first location may recover full damages, even if the road is not built on his property. The alignment of a railroad on a street may be changed, after construction and operation, against the protest of an abutting owner : Snyder v. Railroad Co., 55 Pa. 340. This matter has no real bearing on the case in hand, for the defendant's route has been changed and amended by resolutions filed in the proper office, to correspond with the line which it is proposed to build.

Having found as a fact that the crossing of plaintiff's easement by the electric railway under the amended charter will not inflict upon plaintiff any actual damage, the injunction will be refused without any additional order, except as to costs. The costs will be imposed upon defendant, because the injunction would have been granted, and would have been continued in force, against the construction of the railway on the line intended when the bill was filed, until first the necessary consent of local authorities had been obtained, and second, until there had been an adjudication of the questions involved in the breaking through and removing the old retaining wall on the south side of the viaduct. The plaintiff, however, is not entitled to damages merely because its easement is crossed, nor can it require the filing of a bond by defendant: Railway Co. v. Railway Co., 10 Pa. C. C. R. 401, and 149 Pa. 1 ; see also Railroad Co. v. Railway Co., 11 Pa. C. C. R. 165. The plaintiff's case, at best, is now one of damnum absque injuria.

The court below filed the following opinion in this case :

There is no evidence whatsoever to implicate the Cumberland Valley Traction Company in any of the matters complained of in the bill. The Harrisburg & Mechanicsburg Electric Railway Company proposes to carry its line across the railroad of

the plaintiff on an overhead bridge, having a span of one hundred feet, and a clear elevation of twenty-two feet. At the place of crossing, the plaintiff has a right of way, sixty feet in width, and a strip of land immediately adjoining, twenty feet wide, which was acquired by deed. No actual damage will be done to plaintiff by the construction of the electric line as projected, and there will be no interference with the operation of the railroad. The deed to plaintiff for the twenty feet wide strip of land expresses that it is granted for railroad purposes, and the fact that the acquisition of the strip was by a conveyance and not by condemnation proceedings, is of no moment in this case. We have this day filed findings of fact and of law and an opinion in the case of the Cumberland Valley Railroad Company against the two defendants herein, entered to No. 7, November T., 1894, in equity, in which we dispose of the material points which are involved in this action, and in accordance with what is there said the bill will be dismissed.

It must be dismissed, also, for another reason, viz: prior to the institution of this suit, there was no attempt made by either of the defendants to cross the road of the plaintiff, nor had plaintiff any reason to apprehend that such an attempt was imminent.

And now, November 7, 1895, an injunction is refused and the bill is dismissed at plaintiff's costs.

*Error assigned* was decree dismissing bill.

*David Watson Rowe, Edw. B. Watts, John G. Johnson* and *John Hays*, with them *W. F. Sadler*, for appellant, cited: Penn R. R. v. Montgomery Pass. Ry., 167 Pa. 62; Lehigh Coal & Nav. Co. v. Inter-County St. Ry., 167 Pa. 75; Pa. Schuylkill Val. R. R. v. Reading Paper Mills, 149 Pa. 18; Railway Co. v. Peet, 152 Pa. 488; Pittsburg Junction R. R. Co.'s App., 122 Pa. 511; Potts v. Quaker City R. R., 161 Pa. 396.

*A. G. Miller* and *J. W. Wetzel*, for appellees, cited: Gettysburg Battlefield Assn. v. Ry. Co., 2 Dist. Rep. 659; Gillette v. Chester Ry. Co., 2 Dist. Rep. 450; Pa. R. R. v. Montg. Co. Ry., 3 Dist. Rep. 58; Union St. Ry. v. Hazelton etc. Ry., 154 Pa. 422; Act of May 14, 1889, P. L. 211; Pa. R. R. Co. v. Mtg.

Pass. Ry., 167 Pa. 62; Pittsbg. etc. Ry. v. Ry. Co., 77 Pa. 173; Junction R. R. v. Phila., 88 Pa. 424; Pa. R. R. v. Braddock Ry., 152 Pa. 116; Citizens' Pass. Ry. v. H. E. Pass. Ry., 164 Pa. 274; Lockhart v. Craig St. Ry. Co., 139 Pa. 419; D. W. L. R. R. Co. v. W. B. & W. S. Ry. Co., 11 Pa. C. C. 165.*

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 5, 1896 :

It is unnecessary to consider all the questions presented by this record. Such of them as are worthy of notice have been referred to, at least briefly, by the learned president of the common pleas in his opinion, findings of fact and conclusions of law sent up with the record. The general and controlling question, however, is, whether a company chartered under the street railway act of May 14, 1889 (P. L. 211), has the right to construct, maintain and operate its road across the lines of a steam railroad company, without the consent and against the protest of the latter, at a point where its roadway is not crossed by a public highway? The answer to this question must, of course, be sought for in the expressly granted or necessarily implied powers and authority with which the street railway company has been invested by the law under which it was created and subject to which it continues to exist. If the right referred to cannot be found therein, it necessarily follows that the question must be answered in the negative.

Section 1 of the act of 1889 provides : " That any number of persons, not less than five, may form a company for the purpose of constructing, maintaining and operating a street railway on any street or highway upon which no track is laid, or authorized to be laid or to be extended under any existing charter, with the privilege of so much of any street used or authorized to be used under any existing charter, as is hereinafter provided, for public use in the conveyance of passengers, by any power other than by locomotive ; and for that purpose may make and sign articles of association, in which shall be stated . . . . the streets and highways upon which the said railway is to be laid and constructed." etc.

Section 4, authorizing extensions and branches, declares that " the act of the company authorizing any extension or branch

---

* For fuller argument see Cumberland Valley R. R. v. Harrisburg & Mechanicsburg Electric Ry. Co., 177 Pa. 155.

shall distinctly name the streets and highways on which said extension or branch is to be laid or constructed." It also provides that "no extension or branch shall be constructed on any street or highway upon which a track is laid or authorized under any existing charter, except as thereinafter provided."

Section 14 authorizes the "use of such portion of the track of any other company, already laid down, as may be necessary to construct a circuit upon its own road at the end thereof." The length of track, to be thus used, "only with the consent of the local authorities of the city, borough or township, in no event, shall exceed five hundred feet of single track." It also prescribes the mode in which compensation for such use shall be made, etc.

The next section declares : " No street passenger railway shall be constructed by any company incorporated under this act within the limits of any city, borough or township without the consent of the local authorities thereof, nor shall any street railway be incorporated hereunder which shall not have a continuous route from the beginning to the end, forming a complete circuit with its own track, excepting the five hundred feet to be used under section fourteen."

Section 17 authorizes the occupation and use of turnpikes, not exceeding sufficient width for two tracks, and requires that compensation for such use shall be first made, to the owner or owners of such turnpike or turnpikes, in the mode prescribed in section 14 aforesaid.

With the exception of above mentioned restricted and qualified rights, to use a small section of another company's track in forming a circuit, and to occupy and use longitudinal strips of turnpikes, etc., street railway companies chartered under said act are certainly not, in express terms, invested with any other power or authority in the nature of eminent domain. Indeed, the specific grant of these qualified rights is strongly indicative of legislative intention to withhold from such companies every other power of eminent domain. This conclusion is further fortified by the provisions intended to restrict them to established streets and highways as the location of their main lines, extensions and branches. As we have seen, their right to construct, maintain and operate street railways is specifically limited to existing streets and highways. The names of the streets and

highways selected by them must be stated in each company's articles of association.  In the recorded action of the company, exercising the branching power, etc., authorized by the act, it must also " distinctly name the streets and highways on which said extension or branch is to be laid or constructed."  In brief, in the selection or adoption of the route, either of their main line, or of any extension or branch thereof, they are expressly confined to established streets or other avenues in cities and boroughs, and to public highways in townships, subject to such further restrictions, even as to them, as are specified in the act. Outside of and beyond the restricted power and authority, as to selection and adoption of a route etc., thus granted, they are not invested with any other authority in that regard, except such as may be necessarily implied.  Without ignoring the well settled rules applicable to the construction of charters, it is impossible to reach any other conclusion than that the legislature, in this carefully drawn and well guarded act, intended to withhold from companies chartered thereunder everything in the nature of a roving commission under which they might assert the right to locate, construct and operate street railroads wherever they pleased.

It was successfully contended in the court below that the authority, given in section 18 of the act, " to cross at grade, diagonally or transversely, any railroad operated by steam or otherwise," is general in its application and confers an unqualified right to cross a steam railroad anywhere without regard to whether there is an established street or highway crossing at the same point or not.  This is a grave mistake.  As we have seen, location, construction and operation of street railways are authorized only on established streets and highways.  Section 18 is evidently predicated of that fact, and hence the authority therein granted is necessarily applicable only to crossings at points where the railroad is crossed by a street or highway. . In other words, it refers only to crossing at a point where the street or highway, on which the street railway is located, crosses the steam railroad.  To hold otherwise would not only be contrary to the manifest intention of the legislature, but it would involve the constitutionality of the eighteenth section.

As to the property on which the alleged trespass was threatened, the learned trial judge found that, " at the place of cross-

ing, plaintiff has a right of way sixty feet in width, and an adjoining strip of land twenty feet wide which was acquired by deed;" and, in sustaining plaintiff's 18th and 19th exceptions to his previous rulings, he further found that said twenty feet wide strip of land is owned by it in fee, that prior to filing the bill defendant company attempted to cross plaintiff's land and right of way at the point in question, and that plaintiff had reason to apprehend that such attempt was imminent, etc., but, in view of the facts, as he found them, he held as matter of law that plaintiff's right of way and ownership in fee of said strip of land were immaterial; that the right to cross plaintiff's railroad, etc., at an elevation of about twenty-two feet above the surface of its tracks was conferred upon the Harrisburg & Mechanicsburg Electric Railway Company by section 18 of the act, and then said: "The long narrow piece of land referred to, which is held in fee is essentially part and parcel of the railroad, just as much so as the easement which it adjoins, and the right to cross it is as clearly given as is the right to cross the easement." For reasons already suggested we think he was clearly wrong in this. Aside from the ownership in fee of the twenty feet wide strip, the plaintiff has a substantial property interest in its right of way which the defendant is bound to respect. While that interest cannot be called a fee, it is a species of title that has some of the incidents of an estate in land. As was well said by our Brother MITCHELL in Railroad Co. v. Reading Paper Mills, 149 Pa. 18, "Such title is sometimes called an easement, but it is a right to exclusive possession, to fence in, to build over the whole surface, to raise and maintain any appropriate superstructure including necessary foundations, and to deal with it, within the limits of railroad uses, as absolutely and as unconditionally as an owner in fee. There was no such easement at common law. . . . It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the cessor of the use for railroad purposes. But whatever it may be called, it is in substance an interest in the land special and exclusive in its nature and which may be the subject of special injury . . . . , and therefore within the rule which governs the application of equitable relief."

There is also manifest error in the 10th finding of fact, viz:

"So far as the evidence has disclosed, the building of defendant's railway and the running of cars thereon will not injure or affect the operation of plaintiff's railroad, or inflict upon plaintiff any actual damage. There will be no increase of danger. from accident or other cause."

Aside from the unauthorized occupation of plaintiff's property by spanning the same with an overhead bridge or viaduct, one hundred feet or more in length and about twenty-two feet above its tracks, at a point where there has never been an overhead or grade crossing of any kind, it is impossible to reach the conclusion that such a superstructure, with electric cars running thereon at frequent intervals, will not result in a greater or less increase of danger to plaintiff company, its patrons and employees. To what extent the danger, from accident or other cause, would be increased, would of course depend very largely on the degree of care and skill exercised in the construction and maintenance of the bridge and in the operation of the street railway thereon, but that, under the most favorable circumstances, there would be an appreciable increase of danger, no one can doubt.

It follows from what has been said that plaintiff had standing to resist the threatened invasion of its rights by the Harrisburg & Mechanicsburg Electric Railway Co., one of the defendants, and, upon the facts shown by the pleadings and proofs, it was entitled to the relief prayed for.

The decree dismissing the bill is accordingly reversed, and the perpetual injunction, specially prayed for, is now granted against the Harrisburg & Mechanicsburg Railway Company, with costs to be paid by said company; and, as to the other defendant, the bill is dismissed.