# Pittock *v.* Central District & Printing Telegraph Company, Appellant.

*Railroads—Right of way—Easement—Telephone companies—Act of February* 19, 1849, *P. L.* 79—*Action.*

A right which a railroad company acquires in land by condemnation proceedings under the Act of February 19, 1849, P. L. 79, is a right which it enjoys for the purpose of its business only, and is limited to railroad uses. A railroad company cannot, therefore, grant to a telephone company the right to erect poles and wires on its right of way, where the use of the property by the telephone company is a private one for its own profit, having only a slight connection with the railroad business. The owner of the land may

maintain an action of trespass against the telephone company for its unlawful entry on its land.

When the law gives the right to a person to enter on the land of another for a particular purpose, and the person so authorized enters for another purpose not authorized by law, such entry constitutes him a trespasser, and an action for trespass will lie.

Argued May 10, 1906.   Appeal, No. 144, April T., 1906, by defendant, from judgment of C. P. No. 2, Allegheny Co., October T., 1902, No. 872, on verdict for plaintiff in case of Thomas R. Pittock v. The Central District & Printing Telegraph Company.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ.   Affirmed.

Trespass to recover damages for the alleged unlawful entry on plaintiffs' land

FRAZER, P. J., charged, inter alia, as follows :

It appears from the testimony that some time ago the Pittsburg, Chartiers & Youghiogheny Railway Company, a corporation created under the laws of this state, built a portion of its road through Mr. Pittock's farm on Neville Island, consisting of about eighty acres of land.   As I understand his testimony, the farm fronts on the main channel of the Ohio river and runs across the island to the back channel on the south side, and is about 1,275 feet in width.   The railroad company has taken a right of way through his property, for which it must pay him.

As you gentlemen are no doubt aware, certain corporations are invested with what is known as the right of eminent domain, that is, the right to take private property for public use ; but such corporations must, under the constitution and laws of this state, compensate the owner for any property taken, injured or destroyed in the erection of their works.   The railroad company took a strip of land through Mr. Pittock's farm, and under the law the width of that strip of ground is sixty-six feet.   When a railroad company takes property of a citizen it may take sixty-six feet.   That is what the law allows a railroad company to take for the purpose of its roadbed.

[After the railroad company had taken the ground of plaintiff that company entered into a contract with the defendant company, allowing the defendant to erect ten poles upon the right of way taken by the railroad company ; and in accordance

with that contract the defendant company erected ten poles upon what is the right of way of the railroad company through Mr. Pittock's ground. Those ten poles, I believe, extend across the entire 1,275 feet.

It is for the erection of those poles that Mr. Pittock claims damages, and you have heard what has been said by counsel in arguing the question of law; that is, whether Mr. Pittock had any right to recover or not, or to what extent he might recover. As we understand the law, it makes no difference so far as this case is concerned, whether those poles are one foot inside the right of way of the railroad company or ten feet, or whether the cross arms extend outside of the right of way of the railroad company or not. As we understand the law, the railroad company had the right to contract with the defendant company to put its poles .there, but in so doing that contract would not prevent Mr. Pittock from recovering any damage he might sustain by the erection of the poles. If the railroad company had seen fit to build a telephone or telegraph line for its own use along their right of way it could have done so without incurring any additional obligation to Mr. Pittock, or, as we say in law, without placing any additional burden upon the ground; but when they entered into the contract with the telephone company permitting it to erect its poles there, by reason of that contract and by reason of erecting the poles on that right of way, an additional burden was imposed upon the land of Mr. Pittock, and, as we understand the law, he is entitled to receive compensation for that additional burden. A railroad company is chartered for a particular purpose; that is, constructing a railroad for transporting freight and passengers. A telephone company is chartered for an entirely different purpose and has no right to erect its poles upon the land of another without the consent of the person owning the land; and while it is on the right of way of the railroad company, that, as I said a moment ago, does not confer upon it the right to take the land without Mr. Pittock's consent, and having taken it without his consent, whatever injury he sustained by reason of that taking he is entitled to recover for in these proceedings.] [3]

[In determining the case you will remember the testimony of the different witnesses in regard to the damage sustained. You will first take into consideration that the railroad has the

right to use that land for railroad purposes.  That is the only burden upon the land by its condemnation proceedings.  Upon that servitude the defendant places an additional burden.  To the extent that that additional burden damages Mr. Pittock he is entitled to recover.  Any damage resulting to him by reason of the railroad company constructing its railroad there we have nothing to do with in this case.  That is a matter that must be determined in some other shape.  We have to do only with the additional damage sustained by Mr. Pittock by reason of the erection of defendant's poles upon the right of way of the railroad company.] [4]

[Mr. Pittock places his damage as the whole amount—I don't know just what he means by that—as $2,000, and then he says the damage for the guy wire which extends beyond the right of way of the railroad company, and for which he would be undoubtedly entitled to recover, even if the railroad company had authority to authorize the erection of the poles by the telephone company, would be $100 for the ten months from the time the wires were placed until the time this suit was brought.  He would have a right to recover for that guy wire and for what other additional damage the poles had done to his property.  He says his damage was $2,000 for all, or $500, I believe, for the ten months.  His son says that $500 would be the amount of all the damage suffered by his father by reason of the erecting of these poles.  You will remember that the guy wire extends from about the top of one pole onto plaintiff's land some twenty or twenty-five feet and is anchored near a hot-house; and then defendant's witnesses say that a fair compensation for it would be from $3.00 to $5.00, based upon the pole life of the line, and that would be all the damage suffered by plaintiff.  I believe one of the witnesses said that the pole life, or the life of a line, is about twelve years; that is, that at the end of every twelve years a line must be rebuilt.

You gentlemen should consider all the evidence in this case and determine what amount would be a fair and reasonable compensation for Mr. Pittock for the use of his land by the telephone company for ten months.] [5]

Verdict and judgment for plaintiff for $354.  Defendant appealed.

*Errors assigned* among others were (3, 4, 5) above instructions, quoting them.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* for appellant.—A railroad right of way is not a right of way or easement, but is an estate in the land itself: Pittsburg, etc., Ry. Co. v. Peet, 152 Pa. 488; Western Pennsylvania R. R. Co. v. Johnston, 59 Pa. 290.

It was from the time of the approval of the railroad company's bond that the title of Pittock was divested: Fries v. Southern Pa. R. R. & Mining Co., 85 Pa. 73; Wallace v. New Castle, etc., Ry. Co., 138 Pa. 168; Keller v. Harrisburg & Potomac R. R. Co., 151 Pa. 67.

This pole line not being on a common highway, the telephone company had no right of eminent domain, either as against Pittock or the railroad company: Penna. Tel. Co. v. Hoover, 24 Pa. Superior Ct. 96; s. c., 209 Pa. 555.

No trespass was committed: Sparhawk v. Bagg, 82 Mass. 583; Walden v. Com., 84 Ky. 312; Little v. Palister, 3 Me. 6.

*Ed. G. Hartje,* for appellee.—The use here complained of, is a trespass to appellee's estate: Western Union Telegraph Co. v. Rich, 19 Kan. 517; American Tel. & Tel. Co. v. Pearce, 71 Maryland, 535 (18 Atl. Repr. 910); Pittsburg & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23; Newton v. Manufacturers' Railway Co., 115 Fed. Repr. 781; Lewis et al. v. Jones, 1 Pa. 336; Sanderson v. Haverstick, 8 Pa. 294; Ridge Turnpike Company v. Stoever, 6 W. & S. 378; Pittsburg, etc., Ry. Co. v. Peet, 152 Pa. 488; Lance's App., 55 Pa. 16.

OPINION BY HENDERSON, J., October 5, 1906:

The Act of February 19, 1849, P. L. 79, authorizes any railroad company incorporated thereunder "to enter upon and into and occupy all land on which the said railroad .... may be located." Provision is made for the compensation proper "for the damage done or likely to be done to or sustained by any owner" of land which such company "may enter upon," and the viewers appointed to estimate the damage are directed to determine the value of land so "taken or occupied;" in doing which, they are to make allowance for advantages which

may result or seem likely to result to the owner of the land in consequence of the making or opening of the railroad. The interest so acquired is more easily described than named. It was called an "easement" in Western Pennsylvania R. R. Co. v. Johnston, 59 Pa. 290, and in other cases there referred .to, but in Pa. Schuylkill Valley R. R. Co. v. Reading Paper Mills, 30 W. N. C. 148, Judge MITCHELL said, "it may well be doubted if it is not a misnomer to extend to this newly invented interest in land the name of easement;" and in the same opinion it was suggested that the right acquired partook of the nature of a conditional fee. In Pittsburg, etc., Railway Co. v. Peet, 152 Pa. 488, it was held that the interest acquired by condemnation proceedings is a great deal more than a right of way, and that the term "easement" in connection therewith was used in a loose way for the purpose of distinguishing it from a fee. Chief Justice STERRETT in referring to the same subject in Northern Central Railway Co. v. Electric Ry. Co., 177 Pa. 142, used this language: "While that interest cannot be called a fee it is a species of title that has some of the incidents of an estate in land." The use is a public one and the right to condemn only exists at all because of that fact. It is evident from the provisions of the statute that the right which the company acquires is for the purposes of its business only and that its exclusive and absolute control of the property condemned is limited to railroad uses. Having acquired title for a particular public use the property is held for the purposes which alone made the taking lawful: Ridge Turnpike Co. v. Stoever, 6 W. & S. 378; Lance's Appeal, 55 Pa. 16; Pittsburg & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23; Proprietors of Merrimac River Locks, etc., v. Nashua, etc., R. R. Co., 104 Mass. 1. This limitation is expressly recognized in Railway Co. v. Peet, 152 Pa. 488. The use being a public one it necessarily follows that property cannot be taken under the guise of a public use and applied to one which is merely private. The owner is only called upon to part with the possession and control of his property for a particular purpose, and when he presents his claim for damage the amount is fixed by a comparison of the injury resulting from the taking and the advantages resulting to him from the construction of the railroad. To subject the land taken to other uses would not only be without warrant in the statute, but

would deprive the owner of his property without compensation. All that was taken from the appellee when the railroad was located across his farm was the use and possession of his land for railroad purposes. His estate in and control over his property has only been diminished to that extent. The absolute, exclusive and uncontrolled occupancy of the railroad company goes no further. The defendant is not invested with the right of eminent domain; it only justifies its occupancy of the plaintiff's land through the contract between it and the Pittsburg, Chartiers & Youghiogheny Ry. Co., by which company the plaintiff's land was condemned. It may be admitted that the latter company has the right to construct a telegraph or telephone line along its right of way for its own use, and it is equally clear that it may employ another company to perform this service for it. It cannot be seriously contended, however, that the telephone line constructed by the defendant was in any considerable degree for the use of the railroad company. The poles and wires erected constitute a trunk line of the telephone system of the defendant extending to "Rochester and the towns down the river." The poles carry thirty-four wires. As a consideration for the right of way the railroad company was to be supplied by the defendant with one wire for its use and had the privilege of attaching at its own expense two telegraph wires on the poles used by the defendant. Clearly the use of the property by the defendant was a private one for its own profit, having no reference to the convenience or necessities of the railroad company except the comparatively insignificant. use of one telephone wire and the right to attach two telegraph wires to the pole. In granting to the defendant the right to maintain its line within the right of way over the plaintiff's farm the railroad company subjected the land to a use not contemplated in the condemnation proceeding, nor authorized by the law under which it took possession of the plaintiff's land. If it may authorize the construction of a telephone line it may in like manner permit an oil or gas or water company to lay its pipes within the right of way without the consent of the owner of the fee, or transfer the right to use the soil for other purposes. The owner has not consented to this use of his land; nor does any law to which our attention has been called authorize such occupancy. As the railroad company had no

authority to grant the right which the defendant claims, and the defendant's use of the soil is practically independent of the railroad's use, the occupancy by the defendant is in violation of the plaintiff's right. The defendant could not have secured a right of way from the plaintiff adversely and we think this cannot be done indirectly by acquiring from the railroad company a right which it had no authority to grant. The case of American Telegraph & Telephone Co. v. Pearce, 71 Md. 535 (18 Atl. Repr. 910) is directly in point and adverse to the defendant's contention.

We think the plaintiff's right may be asserted in an action of trespass. The interference is with his estate and not with that of the railroad company. The plaintiff is still the owner of the soil except as to the uses to which it was subjected when taken possession of by the railroad company. The defendant is using the land for a purpose not included in the uses of the railroad company, and is in no better situation than if there had been a conversion of the whole right of way by the railroad company to some other than railroad purposes. When the law gives the right to a person to enter on the land of another for a particular purpose, and the person so authorized enters for another purpose not authorized by law, such entry constitutes him a trespasser and an action of trespass will lie: Ridge Turnpike Co. v. Stoever, 6 W. & S. 378; Proprietors of Merrimac River Locks, etc., v. Nashua, etc., R. R. Co., 104 Mass. 1.

It was conceded at the trial and is made manifest by the evidence that the defendant trespassed upon the plaintiff's land outside of the lines of the right of way. A guy line attached to one of the poles extended eighteen or twenty feet into the plaintiff's field and the arms of the poles also projected over the line. Estimates of the amount of damage varied and we are not convinced that the amount of the verdict is excessive. That subject was carefully considered by the court below and it does not clearly appear that the discretion of the trial judge was exceeded.

The assignments of error are all overruled and the judgment affirmed.