# Terminal Coal Co. *v.* Pennsylvania Railroad Co., Appellant.

*Railroads—Right-of-way—Agreement with landowner—Bridges — Title to right-of-way — Location — Piers and abutments within limits of right-of-way.*

1. The location of its right-of-way, to which a railroad must conform at all times in the future, is the one which fixes the side lines thereof. It does not include such structures, within those lines, as are necessary to support the tracks and other constructions used for railroad purposes.

2. The title which a railroad company has to its right-of-way, is a base fee, and, in the absence of a provision in the agreement, if the right-of-way was thus acquired, it has a right to use, for railroad purposes, the space between those lines, whether at the grade of its tracks, or above or below them, and, within those lines, to enlarge or extend that use, for like purposes, in such a way as to it shall seem best; and this is true as well against the owner of the fee, subject to the right-of-way, as against all other persons.

3. Where an agreement between an owner of land and a railroad company gives to the latter a right-of-way over such land, and designates what rights are reserved to the landowner, he is limited thereto as respects the land included within the lines of the right-of-way.

4. Primarily, at least, a railroad company has the right to determine what shall be the size and location of the piers and abutments, within the lines of its right-of-way, which are required to properly support its tracks and other constructions used for railroad purposes.

5. A contract between a landowner and a railroad company, by which the latter is given the right to construct a bridge over the land of the former, for use in connection with its road, and for that purpose to use as much of the land as may be necessarily occupied by piers, gives to it also the right to do so as respects the abutments, which are but the terminal piers of the bridge.

6. The right to construct a bridge implies the right to use all proper means to make the bridge an adequate one for the purpose intended, including the construction of piers and abutments, for every such appliance is a part of the bridge.

Argued September 27, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. .

Appeal, No. 48, March T'., 1927, by defendant, from decree of C. P. Allegheny Co., Oct. T., 1924, No. 2721, for plaintiff, in case of Terminal Coal Co. v. Pennsylvania Railroad Co.   Reversed.

Bill for injunction.   Before DREW, J.
The opinion of the Supreme Court states the facts.
Decree for injunction.   Defendant appealed.

*Error assigned* was decree, quoting it.

*W. S. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellant.—Plaintiff had and could have no vested right in any strip or particular location that interfered with the proper and necessary "operations or business" of defendant railroad.

Title by adverse possession cannot be acquired against a railroad company for a portion of its right-of-way, as it holds its title for a public use: W. N. Y. & P. Ry. v. Foundry & Machine Co., 251 Pa. 383; Holmes & Holmes v. P. S. C., 79 Pa. Superior Ct. 374.

*Edwin W. Smith,* with him *C. Elmer Bown,* for appellee.—All contracts made by a railroad company with the landowner whereby privileges are wholly or in part obtained without condemnation, are favorably regarded by the courts and will be construed strongly in favor of the landowner: Kraeer v. P. R. R., 218 Pa. 569.

The railroad company is bound by the original construction on the ground both of its own railroad and appellee's coal railroad and by the description of the coal railroad in deeds to appellant and persons in privity with appellant: Winslow v. Vallejo, 5 L. R. A. (N. S.) 854.

OPINION BY MR. JUSTICE SIMPSON, November 28, 1927:

On July 25, 1871, James H. Hays, plaintiff's predecessor in title, granted to the Pittsburgh, Virginia and Charleston Railway Company, through which defendant claims, a forty feet wide right-of-way across certain land owned by him, including therein the ravine at Beck's Run. The agreement reserved to Hays, his heirs and assigns, the right to construct, maintain and operate, over or under the right-of-way, but not at grade, such railroads as he or they might wish, provided that *"in no case shall he or they interfere with the regular operations or general business"* of the railway. Defendant was also required to "construct and maintain all necessary bridges over all coal railroads or other roads [of the grantee, his heirs and assigns] now in operation or located." The findings leave it doubtful whether there was any coal railroad then being operated in the ravine at Beck's Run; there was one, however, which had been located, and either then or later constructed and operated; but it was wholly abandoned, and its tracks removed, long prior to the inception of these proceedings. It was the only railroad which ever did cross defendant's right-of-way at this point. The agreement further provided that the railway should not fill in the ravine at Beck's Run in constructing its road, but should so bridge the ravine as to "afford said Hays, his heirs and assigns, free and uninterrupted passage under said railway for wagons and also for coal railroads on the whole of said ravine, *except so much as may be necessarily occupied by piers*......[and should] make a permanent location of its said railway upon Hays' said land within six months......and furnish to the said Hays a correct map and profile of the same showing location and grade, with such landmarks as will define the same with certainty."

The plan referred to was furnished, and the railway was built at the location appearing thereon. The superstructure of the bridge then constructed over Beck's

Run and its ravine, was of wood, and continued as originally built until about the year 1902, at which time it became necessary for the railway to have a wider and more substantial bridge at that point. For this purpose, it then purchased, from the heirs of Hays, an additional forty-six feet of right-of-way, immediately adjacent to the existing forty feet, subject "to the same conditions upon which James H. Hays, deceased, granted the original right-of-way," and to the rights and privileges possessed by the Monongahela River Consolidated Coal and Coke Company, under an intervening grant to it. These latter rights and privileges were conveyed back to the Hays heirs by said Coal and Coke Company long prior to the beginning of this suit, and were thus merged into their title in fee.

The contemplated new bridge was built of steel, along the lines of the original location, as widened, and so remained until about the year 1924, when, owing to a further increase in defendant's business, and to the heavier rolling stock which it required, a still stronger bridge became necessary. Defendant made a plan of the intended new structure, and submitted it to plaintiff, the then owner of the fee subject to the right-of-way. Apparently no agreement was reached in regard to it, but defendant proceeded with the work notwithstanding, and, in so doing, placed a larger concrete abutment at the point where the bridge joined the solid ground, whereupon plaintiff filed the present bill in equity to have the previous status restored. The court below sustained plaintiff's contention, decreed that it was entitled to a fifty feet wide opening at the point where the coal road had been located about 1871, and ordered a removal of the abutment, as being the construction which interfered with this right. The present appeal by defendant followed.

The basis of the court's conclusion seems to be that the first location of a right-of-way, to which a railroad is required to conform at all times in the future, con-

templates not only the side lines which fix the boundaries of its right-of-way, but also, where the tracks pass over a bridge, the location of the supporting piers and abutments, which, for that reason, cannot be enlarged, or their location changed, even within the lines of the right-of-way, without a new grant or a legal condemnation. We do not so understand the law. The title of a railroad company to the land within the lines of its right-of-way is a base fee; and, in the absence of a controlling provision in the agreement, if, as here, the right-of-way was thus acquired, it has a right to use, for railroad purposes, the space between those lines, whether at the grade of its tracks, or above or below them, and within those lines to enlarge or extend that use, for like purposes, from time to time, in such a way as to it shall seem best; and this is true as well against the owner of the fee, subject to the right-of-way, as against all other persons: See 22 R. C. L. 863; Pa. Schuylkill Val. R. R. v. Reading Paper Mills, 149 Pa. 18; Northern Central Ry. Co. v. Electric Ry. Co., 177 Pa. 142, 153; Citizens Electric Co. v. Susquehanna Boom Co., 270 Pa. 517, 523. This is especially so where, as here, the agreement states what rights are reserved to the landowner and those claiming under him, that now claimed not being included among them. Under such circumstances, the maxim expressio unius est exclusio alterius applies: Hollenback Coal Co. v. Lehigh, etc., Coal Co., 219 Pa. 124, 128.

It follows that plaintiff's contention must fail, unless the agreement of 1871 (which, as shown, is made the determinative factor in that of 1902 also) contains something which will sustain it. The provision which it is alleged will do so, is the one which states that the railway shall "afford said Hays, his heirs and assigns, free and uninterrupted passage under said railway for wagons and also for coal railroads over the whole of said ravine." Plaintiff, as the present owner of the fee, by title derived through Hays, has the right to have

that clause of the agreement enforced, so far as it is applicable, but not as to "so much [of the land under the roadbed] as may be necessarily occupied by piers," for the agreement contains an express reservation to this effect. There is no averment in the bill in equity, and no finding by the court below, as to what portion, if any, of the ground occupied by the abutment which is ordered to be taken down, is in excess of the necessary requirements for the proper support of the new bridge, and, hence, as the railway, primarily at least, had the right to determine the size and location of the abutments, presumptively there is no just ground for complaint as to either. The agreement expressly states that there is to be a "permanent location" of the right-of-way, and it follows therefrom that whatever land is "necessarily occupied by piers," within the lines of that "permanent location," may be used, not only as occupied in the beginning, but as needed from time to time in "the regular operation or general business" of the railway. This much, at least, is settled by the cases hereinbefore cited.

It is said by plaintiff that the decree below requires only the removal of an abutment, and not of a pier. An abutment, however, is not something wholly distinct from a pier, though it slightly differs from an ordinary one, because of its different location in relation to the structure of which it is a part. An abutment is defined in the New Century Dictionary, as "the part of a pier which receives the thrust of an arch," and in Webster's New International Dictionary, as "the part of a buttress, pier, wall, etc., which receives the thrust or lateral pressure, as of an arch." It is, then, "part of a pier"; and this being so, it was expressly agreed that sufficient land might be used to support it. The middle piers have arches springing from either side of them; these counterbalance the lateral thrust of each other, and thus preserve the structure from falling; an abutment is a terminal pier, where there can be but one arch,

and in which the abutment against the solid earth on the other side, is utilized to prevent the collapse which would probably result if there was nothing on that side to protect against the lateral pressure from the arch on the other. It would be absurd to suppose the parties contemplated that the ends of the bridge should be supported on piers, as distinguished from abutments, when the latter were far more available, and were the usual construction at similar points; and that defendant would have to devise some unusual and unsound construction, which would in no way benefit Hays, his heirs or assigns, in order to prevent the disastrous result which might flow from the lateral thrust of the arch on the other side.

Moreover, the agreement specifies that the railway "shall bridge the ravine at Beck's Run." This implies that it may use all proper means to construct an adequate bridge. One of the usual means for that purpose is an abutment, similar to the one built by defendant. We have repeatedly held that "a bridge is incomplete until everything necessary for its use has been applied, and every such appliance is part of the bridge" (Penn Twp. v. Perry Co., 78 Pa. 457; Francis v. Franklin Twp., 179 Pa. 195, 202), including the necessary abutments: Westfield Boro. v. Tioga Co., 150 Pa. 152.

The decree of the court below is reversed and plaintiff's bill in equity is dismissed at its costs.