## Obringer v. Minnotte Brothers Co.

*Edward J. McGinness*, for plaintiff.

*J. Roy Dickie*, of *Dickie, Robinson & McCamey*, for defendants.

RICHARDSON, J., May 27, 1944.—This is an action in ejectment to establish title to a strip of land in the

Thirty-first Ward, Pittsburgh, formerly Hays Borough. At the conclusion of the testimony, the trial judge directed a verdict for defendant. Plaintiff has filed a motion for judgment n. o. v. which is before us for disposition.

In his lifetime, James H. Hays owned large tracts of land underlaid with coal in the district south of the Monongahela River, including, inter alia, the present thirty-first ward, formerly Hays Borough. Hays, and his heirs after his death, mined the coal and transported it to the Monongahela River over private railroads constructed over their lands, or by easement over the lands of others.

In 1900 the heirs of James H. Hays conveyed much of their coal land to Monongahela River Consolidated Coal & Coke Company, the grant including the right of way occupied by the private railroad described as the "Hays Coal Railroad". The deed contained a provision for the reversion of said lands and right of way after the grantee had completed mining the coal, not to exceed 30 years from the date thereof. In 1914 the Monongahela River Consolidated Coal & Coke Company reconveyed the lands and the right of way to the James H. Hays heirs.

Sometime during the ownership of the land by Monongahela River Consolidated Coal & Coke Company, the coal railroad which had been constructed by Hays was discontinued and its use abandoned.

In December 1914, the Hays heirs conveyed three parcels of land to Ward Equipment Company. The boundary of one of the parcels was described as "the easterly line of the Hays Coal Railroad". The description of the second parcel called for a line which extended "to a point on the southerly side of the right of way of the Hays Coal Railroad; thence . . . along the said last mentioned line . . . to a point on the southerly side of Eighth avenue". This deed, conveying title in fee simple, was made "subject to . . . any and all rights of way".

In 1914 the Hays heirs laid out a plan of lots on property separated by a street from the property in question and they reserved to themselves the right to construct and operate "a branch railroad across Hays Avenue and Glass Street at places shown on this plan, designated 'Hays Coal Railroad right of way 40', subject as aforesaid."

In 1915 the Hays heirs conveyed to Carl K. Devlin over 800 acres of coal land. With respect to the strip of land involved in this suit and other strips which had been used in connection with the coal railroad, the grantors conveyed "all their right, title and interest in and to all those certain tracts or pieces of land, consisting of connected strips of land formerly and to be used for railroad and transportation purposes, with terminal facilities," etc. The right of way is described by metes and bounds in this deed.

Devlin conveyed all of this property to Terminal Coal Company in 1915, and in 1938 the strip of land 40 feet wide, formerly occupied by the coal railroad, was conveyed to defendant.

By various conveyances the parcel on the easterly side of the 40-foot strip was vested in Clarence Obringer, the plaintiff herein, and the parcel on the westerly side of the strip was conveyed to defendant.

Defendant claims title in fee simple to the whole of the 40-foot strip formerly occupied by the "Hays Coal Railroad", between the properties of the parties. Plaintiff claims title to one half of 20 feet of the width of the said strip.

The principal question involved in this case is whether Ward Equipment Company, under the deed of 1914, acquired title to the 40-foot strip described as the right of way of the "Hays Coal Railroad". At the time of that conveyance, the rights and privileges which had been granted to Monongahela River Consolidated Coal & Coke Company in 1900 had been merged into the fee owned by the Hays heirs: Terminal Coal Co. v.

Pennsylvania R. R. Co., 291 Pa. 103, 106. The operation of trains over the coal road had been abandoned, and there were no tracks on the 40-foot strip in question.

We must ascertain the true intention of the parties to the deed to Ward Equipment Company. One of the rules of construction which has been recognized in Pennsylvania is that when a monumental boundary line given in a deed has physical extent, as a road, street, or other monument having width, courts will so interpret the language of the description, in the absence of any apparent contrary intent, as to carry the fee of the land to the center line of such monument. That rule was recognized in Rice v. The Clear Spring Coal Co., 186 Pa. 49, where the right of way of a railroad incorporated subject to the provisions of the General Railroad Act of 1849 was held to be a public highway.

Does the rule apply to a strip of land owned in fee, over which the grantor has constructed or intends to construct a private railroad for his own benefit? Even after the original railroad had been torn up, the Hays heirs contemplated a "branch railroad" through the property and the property of others (vide reservation in "Cready plan of lots", 1914), and that strips of land were "formerly and to be used" for railroad and transportation purposes. There is no doubt that the coal railroad had been, and when reconstructed would be, a private facility for the transportation of coal from the mines of the Hays heirs or their vendees. It was not an appurtenance to the tracts which abutted its path. Insofar as the land owned by the Hays heirs is concerned, there was no separate estate for the right of way.

In determining the intention of the parties to the Hays-Ward Equipment Company deed, we must, therefore, take into account that this was a private railroad which was not appurtenant to the land which was conveyed. It was an entirely private way for the exclusive use of the vendors. It was not a highway in the sense that it was common, open, or public.

In the case of a public way, the presumption is always in favor of the boundary being the center of the way, and the use of the word "along" in a description of a tract will convey to the center of the monument described, if it be a public way: Angell on Highways, sec. 315.

It is the law in Pennsylvania that whether a way or alley be public or private, if it be actually laid out and opened and is appurtenant to the properties abutting upon it, the call for the alley will carry the title to the center line, in the absence of an expressed intention by the grantor to the contrary: Saccone v. West End Trust Co., 224 Pa. 554; Oliver v. Ormsby, 224 Pa. 564. In these cases it will be noted that the alleys were dedicated and opened for the benefit of the owners of abutting lots, and in the last-mentioned case the lots were sold upon the faith of the alley, as shown by the plan. In those cases, it was held that the original grantors intended to convey to the adjoining lot owners, subject to the rights of others in the alleys.

In the present case, the right to use the coal railroad was not granted to Ward Equipment Company, and the railroad cannot be said to have been an advantage to the grantee. A factor to be taken into consideration in determining the intention of the grantors is that the parcel on each side of the coal railroad was separately described. It would aid plaintiff's contention if the conveyance had included the entire tract by metes and bounds, and the whole made subject to the right of way of the railroad. As we view the conveyance, the separation of the land into two parcels indicated an intention to exclude the grantee from any use of the railroad or any interest in the land. It is true that, after the sale, the grantors possessed a comparatively narrow strip of land, but it by no means follows that the owners contemplated that they were reserving a mere easement therein when they held the adjoining land. The strip in question was roughly 300 feet in length, with an opening of 40 feet upon a public street. While the Hays

heirs subsequently sold to Devlin the strips of land which had been used for the right of way of the coal railroad, it will be noted that they conveyed the property to him without mention of the conveyance to Ward Equipment Company.

In Skelton, Boundaries and Adjacent Properties, sec. 231, the basic reasons for the rule that a grant of land bordering on a highway carries title to the center of the highway, in the absence of a contrary intention, are recited:

"The basic reasons for this rule are: (1) The absence of practical use to the grantor of relatively small, odd shaped parcels of land which would remain in his possession; (2) the greater value to the grantee who has acquired adjacent land, and who has an immediate interest in the properties adjoining; (3) the public convenience, which is best served by having control of highways and streets in the owners of adjacent properties, rather than in distant owners, who have no incentive to keep them up; (4) the concern of the State and other political units as to who shall determine and pay for improvements; (5) prevention of disputes regarding precise boundaries; (6) the embarrassment and confusion which would prevail if a different rule existed."

In 4 Tiffany, Real Property (3rd ed.) 106, sec. 996, the rule of construction is recited. The author continues:

"Some courts support this presumption on the ground of public policy, in that separate ownership of the highway strip and the abutting property is prolific of private disputes and public disturbances; others that the terminus of a boundary is the central point of the monument, and others on the more plausible and satisfactory ground that it is the probable intention of the grantor to convey all of the appurtenant rights and not to keep for himself something which can serve him no useful purpose."

An examination of the reasons for the rule convinces us that there is no practical application of any of them to the facts of this case. When it is considered that the parcels conveyed had no appurtenant rights in the coal railroad and that the strip of ground was indeed useful to the Hays heirs despite the absence of the railroad, as well as the fact that the parcels had adequate access to public highways, it would seem that the presumption is entirely destroyed. There is no question of public convenience, because the public had no rights in the strip. Under all of the facts of this case, it seems clear that the Hays heirs did not intend to convey to Ward Equipment Company any right in the strip formerly occupied by the coal railroad.

It will be noted that none of the plaintiff's predecessors in title appears to have claimed title to the strip of ground involved in this case, and that the question has arisen after a lapse of nearly 40 years. The testimony indicates that plaintiff himself attempted to lease the land which he now claims from Terminal Coal Company, defendant's immediate predecessor in title, and that he leased from Mesta Machine Company a strip of land abutting his property on the south which had been used as a right of way for another branch of the coal railroad. While these circumstances are not controlling in determining the intention of the Hays heirs in the conveyance to Ward Equipment Company, they indicate the construction which plaintiff himself placed upon that conveyance over a period of years.

The motion for judgment n. o. v. will be refused.

### Order of court

And now, May 27, 1944, plaintiff's motion for judgment non obstante veredicto having come on to be heard, upon consideration thereof it is ordered that said motion be and it is hereby refused, and the prothonotary is directed to enter judgment upon payment of the verdict fee.