## West Reading Borough v. Keiser.

*Bridges—County bridges—Maintenance of approaches—Sidewalks along bridge approach in borough—Right of borough to require abutting owner to construct sidewalk—Lien.*

1. A county bridge, including the approaches necessary to give access thereto, must be maintained at the county's expense.

2. Where a borough notifies an owner abutting on an approach to a county bridge to lay sidewalk, and proceeds to do the work and impose a lien for its cost upon the abutter's property, the lien is not enforceable. In such case, the borough had no authority to notify the owner, or do the work or to file a lien, and cannot collect the expense of the work from the owner.

3. Where the plans, specifications and contract for a new bridge joining the City of Reading and the Borough of West Reading show that that portion of Penn Avenue in West Reading extending from the western end of the concrete structure to a point in said avenue about 175 feet west of said structure must be regarded as an approach to the bridge, reasonably necessary for the use thereof: *Held,* that the borough was without authority to compel defendant to lay the sidewalk and curb upon the approach in question, and that the county could not shift the burden of maintaining said approach by an arrangement with the borough.

Trial by court without jury under the Act of April 22, 1874, P. L. 109. C. P. Berks Co., May Term, 1924, No. 18, A. D.

*Forrest R. Shanaman* and *Charles W. Matten,* for plaintiff.

*Joseph R. Dickinson* and *J. H. Jacobs,* for defendant.

STEVENS, J., Nov. 15, 1926.—This cause was submitted to the court for trial without a jury under the provisions of the Act of April 22, 1874, P. L. 109.

The Borough of West Reading caused to be issued a *scire facias* on a lien filed by it for paving of sidewalk, with retaining wall and railing, and laying curb. An original and two amended affidavits of defence were filed by the defendant, in which the defences were set up (1) that the work for which the claim was filed was the erection of a curb, sidewalk, etc., upon the part of a county bridge known as an approach thereto, over which the plaintiff borough has no control and is without authority to make the paving, etc., and charge the cost to the defendant; (2) that the defendant, at the time of erection of the new county bridge and the destruction of his sidewalk and curb in such erection, had a sidewalk in good condition, laid and set according to the then established grade of the borough and in accordance with the orders of the borough to pave and curb; that the County of Berks in the erection of the new bridge seized and took possession of his sidewalk and raised the grade thereof, and that since then said property has not been under the dominion of the borough but of the county, and that the borough was without authority to do the work and charge defendant therefor; that the county raised the grade, erected a retaining wall, paved the street, set curbs and kept and maintained the same until the borough removed them; and (3) certain errors as to amounts. The second amended affidavit of defence sets up as a defence a collusive agreement between the borough and the county to assist the latter in evading its legal duty to do the work, and reiterates the defences hereinbefore mentioned.

When it became necessary to replace the old bridge at the foot of Penn Street, in the City of Reading, spanning the Schuylkill River and joining Penn Avenue, in the Borough of West Reading, the necessary proceedings were had. The plans, specifications and contract were approved by the court. By reason of the fact that fixed clearances were required over two railroads, one on each side of the river, the grade of the new bridge as designed, at the western end of the concrete structure, was about six feet above the grade of

West Reading Borough v. Keiser.

Penn Avenue as that grade met the grade of the old bridge. Without some action, either changing the grade of the bridge or of the street or building an approach to the bridge, the bridge would have been practically useless. Before the completion of the plans, there was a conference between the county and borough authorities, and it was understood that the grade of Penn Avenue would be raised. However, so far as appears, the borough never took the necessary action to raise the grade, nor did it ever physically raise the grade. The bridge was constructed and the contractor filled in and paved with macadam the portion of Penn Avenue, the grade of which was physically raised thereby, beginning at a point about 175 feet west of the western end of the concrete structure of the bridge and extending eastwardly to said structure. The contractor on said raised portion erected a wooden walk for pedestrians. The county maintained control thereover for several years, during which it repaired the walk whenever necessary. The defendant herein successfully maintained a suit against the county for damages occasioned to his property by reason of the erection of the bridge, including the raising of the approach thereto. Finally, the county agreed to reimburse the borough for the cost of laying a sidewalk and curb along defendant's property, if, after notice, he failed to cause the same to be laid and the borough laid the same, and it was decided that the borough could not legally collect the cost thereof from the defendant. To us, it seems clear from the plans, specifications and contract for the new bridge that that portion of Penn Avenue in West Reading extending from the western end of the concrete structure to a point in said avenue about 175 feet west of said structure must be regarded as an approach to the bridge, reasonably necessary for the use thereof, and that, when the county appropriated the same for the purpose of an approach, the control thereof passed from the Borough of West Reading to the County of Berks. Consequently, the borough was without authority to compel the defendant to lay the sidewalk and curb, which it notified him to cause to be laid, and could not collect from him the cost of laying the same. Nor could the county shift from its own shoulders the burden of maintaining said approach by an arrangement with the borough.

In the light of the decisions, it is clear, this being a county bridge, that, if any change in a highway by reason of the erection of the bridge was necessary, the county was bound to do it in order to make the bridge accessible to the public, for whose use and convenience it was erected. As said in Penn Township v. Perry County, 78 Pa. 457, 459: "That the approach to a bridge is part of the highway is doubtless true, but so, also, is the bridge itself; and as the construction of this part of the highway is too expensive for the township to bear, therefore, it is imposed on the county. The design of bridging is to provide a safe and convenient passage for the public over some stream or ravine, but no such passage is afforded when the structure cannot be approached. . . . Certainly this (proper means of access) is so necessary to its use that without it the structure is a vain thing; utterly useless and of no account. The bridge is incomplete until everything necessary for its proper use has been supplied, and every such necessary appliance is part of the bridge." As to boroughs, see Westfield Borough v. Tioga County, 150 Pa. 152, 154. In Francis v. Franklin Township, 179 Pa. 195, the township sought successfully to avoid liability for damages for negligence in the maintenance of an approach to a county bridge. In that case, wing-walls extended back from the shore abutments for a distance of fifteen to twenty feet. These walls were without sufficient guard-rails. Suit was brought against the township alleging negligence on its part in not erecting guard-rails. The Supreme

Court, considering the duty imposed by statute on the respective territorial sub-divisions of the State in reference to county bridges, points out that, prior to the entering of record of a bridge as a county bridge, the duty of construction and repair was unquestionably upon the township. The common law and statutory duty of the township to repair was taken from the township by the Acts of June 13, 1836, § 34, P. L. (1835-36) 560, and of April 13, 1843, P. L. 221, and imposed on the county, and the court held it to be the duty of the county to keep in repair county bridges of record. Referring to Penn Township v. Perry County, 78 Pa. 457, 459, the court says, at page 202: "The question having thus been pointedly decided, is no longer open for argument." The appellee contended that the township was liable because at times it did work on the approaches to the bridge, thereby assuming the duty of repair. The court said: "It was the duty of the county to build this bridge, of which the wing-walls were a part, and keep both in repair; this was a duty imposed by statute; no duty was by law thereafter on the township in the matter; the supervisors could not, without express statutory authority, assume the duty of another territorial sub-division of the State, and thereby impose liability for neglect of that duty on the township. . . . In whatever work they did on this bridge, they must be regarded as mere agents of the county whose duty it was to do the work." In Williamsport v. Lycoming County, 34 Pa. Superior Ct. 221, it is held that, where the duty of maintaining highways is imposed upon cities, townships and boroughs, and the duty of maintaining bridges is imposed on the county, the question as to what constitutes an approach to the bridge, in other words, where the duty of the county begins and the duty of the city, borough or township ends, must generally depend for its determination upon the facts of the particular case, and not upon any arbitrary rule relative to the distance from the bridge structure. The distinction between an approach to a bridge and a way leading to a bridge is there considered. (See, also, Com. v. Loomis, 128 Pa. 174.) Judge Rice, at page 226, says: "We do not say that the approach to a bridge is confined to that part of the embankment which is within the wing-walls." The limitation, however, is fixed as to that which is necessary to make the bridge accessible, physically, from the highway. By the term "necessary" is meant reasonably necessary, a question in many cases for a jury. In view of the plans, specifications and contract, the acts done thereunder in filling, paving, etc., it cannot be said but that the approach as constructed by the county was reasonably necessary to make the bridge accessible. That approach is as much a part of the bridge as the floor itself, Com. v. Hamilton, 80 Pa. Superior Ct. 240, 243, and includes what is necessary for the use of a foot passenger: Cambridge Springs Borough v. Crawford County, 35 Pa. C. C. Reps. 281, 283. It is perhaps true that a shorter and steeper grade might have been fixed; but the grade as determined upon was evidently the result of competent engineering advice, approved by the proper authorities, and, so far as we know, its necessity is unquestioned. In the last mentioned case, there are certain facts somewhat analogous to the facts in the case before us. It was held that the fact that the county commissioners claimed that the township supervisors had agreed to construct the approach was no defence to a petition for a writ of mandamus to compel them to complete the work, that the statutory proceedings duly had could not be affected thereby. In this case, even if there had been an agreement such as testified to, yet, in view of the failure of the borough to take any action, even if it were to be held that the borough could relieve the county, it never appears to have done so. The borough now argues that the borough council agreed to change the grade of Penn Avenue, as

requested by the county, and the county agreed to pay all the expenses incident to the change of grade, etc., and that the borough did, by ordinance, change the grade. This last is not the fact. This argument is based entirely upon the alleged change of grade by the borough which it never did change, by ordinance or otherwise. Nor is there any force to the argument that council, by subsequent ratification, validated or adopted an unauthorized act, as in Shiloh Street, 165 Pa. 386. The change of grade was actually made by the county pursuant to the duty imposed upon it by law.

We feel compelled to conclude that the paving which the borough did along defendant's property was done upon an approach to a county bridge, something which the county was legally bound to erect and keep in repair, and that the plaintiff is not entitled to recover therefor from the defendant. This view of the case renders it unnecessary to consider the other matters of defence.

In this case, there have been filed by both sides requests for findings of fact. We have not specifically answered all the requests, nor are further answers required under the Act of April 22, 1874, P. L. 109, than the statement of facts as found by the court: Com. v. Monongahela Bridge Co., 216 Pa. 108; Kuhn v. Buhl, 251 Pa. 348, 375. We have stated separately and distinctly the facts found and the conclusions of law. No points were submitted in writing by counsel. The findings and conclusions are as follows:

### Findings of fact.

1. On Oct. 11, 1911, the Court of Quarter Sessions of Berks County approved plans, specifications and contract for the erection and construction of a new and sufficient bridge to take the place of the then existing county bridge spanning the Schuylkill River from the western territorial limit of the City of Reading to the eastern territorial limit of the Borough of West Reading, in the County of Berks, under the provisions of the Act of Feb. 14, 1907, P. L. 3.

2. The floor of the old bridge that existed at the time of the contract referred to in the first finding of fact was level with the then existing grade of Penn Avenue, in the Borough of West Reading.

3. The defendant at that time was, and has since continued to be, the owner of a lot or piece of ground, with the buildings thereon erected, situate on the south side of Penn Avenue, West Reading, having a frontage on Penn Avenue of 160 feet, beginning at a point about twenty-two feet west of the floor proper of the new bridge, and extending thence westward.

4. The plans and specifications for the erection of the new structure, at the western end thereof, called for a fill of approximately six feet, occasioned by the increased height of the new bridge above the grade of the old bridge and of Penn Avenue as established, and the new bridge required the widening of said Penn Avenue to a width of from sixty to eighty feet in order to afford a proper approach to the new bridge.

5. The plans, specifications and contract referred to in the first finding of fact required the contractor to fill in and make a fill for what in the specifications is described as an approach to the bridge, along the entire width or front of defendant's property, of a depth varying from six feet, at the western end of the floor of the new bridge, to zero, at a point west of the western line of defendant's property, where, according to the plans and specifications, the fill would meet the then established grade of Penn Avenue.

6. Before the plans for the new bridge were completed, at a conference between the county authorities and members of the Borough Council of West

Reading, it was verbally decided that, if the Borough of West Reading would pass the proper legislation to raise the grade of Penn Avenue to meet the grade of the new bridge, the County of Berks would save the borough from all expenses, either as far as property damage or the change of grade was concerned, to which arrangement the members of council of the borough agreed, and which damages, costs and expenses were paid by the County of Berks.

7. The Borough Council of West Reading never did pass such legislation, but, on May 6, 1913, passed an ordinance, No. 52 (Exhibit No. 9), increasing the width and re-establishing the grade of Penn Avenue, etc., which ordinance was amended by ordinance No. 77 (Exhibit No. 10), passed Oct. 17, 1916. By these ordinances the width of Penn Avenue from the eastern limits of the avenue to the first angle west of First Avenue (west of defendant's property), was increased from seventy to eighty feet. The grade elevation was established between the same points as follows: On the south side, at the first angle west of First Avenue, 216.90; at a point 406 feet 6 inches (in the first ordinance 315 feet) east of said angle, 210.60 (in the first 212.03); on the north side, at the first angle west of First Avenue, 217.40; at a point 385 feet 2 inches (in the first 315 feet) east of said angle, 211.47 (in the first 212.03).

8. By an admission filed of record, it is admitted that the said ordinances do not affect that portion of Penn Avenue in front of and along defendant's property, because that portion of defendant's property along which the improvement in suit was made lies between the western end of the bridge proper and a point 406 feet 6 inches east of the first angle of Penn Avenue west of First Avenue.

9. In conformity with the terms of the contract between the County of Berks and L. H. Focht & Son, the contractors for the new bridge, the latter filled in and graded that portion of what was Penn Avenue beginning at a point about 175 feet west of the western end of the floor of the new bridge to a width of eighty feet and of a length as shown on the profile, and made upon said fill a first-class macadamized surface at least seven inches thick on the roadway, and on that part provided for pedestrian traffic erected a retaining wall, a wooden sidewalk or boardwalk, and curbing, along the premises of the defendant. The retaining wall was erected upon the former sidewalk distant about three or four feet from the old building-line. For all of this the County of Berks paid the contractors the full amount required by the contract for the new bridge.

10. To No. 76, October Term, 1916, the defendant herein instituted an action of trespass against the County of Berks for damages resulting to him by reason of the taking of his property and making it a part of the bridge, thereby setting his property, then and now a manufacturing plant, in a hole and depriving him of access to his property, except at one particular place, and upon the trial thereof recovered a verdict against the County of Berks for the sum of $10,640, which was subsequently paid by the said county.

11. Defendant's right to recover in said suit was based upon the allegations in his statement therein that the County of Berks had removed the old bridge and erected a wider and higher bridge and constructed the approach thereof on the highway along the front of his property on Penn Avenue and permanently raised the grade of said highway.

12. On Nov. 3, 1916, an agreement in writing (Exhibit No. 1) was executed by the Borough of West Reading on the one part and the County of Berks on the other, reciting that the county authorities have signified their willingness

to pay for the paving of the western approach to the bridge or that portion of the highway of Penn Avenue extending from certain catch-basins to the main section of the bridge, and agreeing on the part of the county, in consideration of the borough's paving said western approach, to reimburse said borough therefor.

13. During the year 1917, the County of Berks paid to the Borough of West Reading the sum of $835.67 on Feb. 6th, and $182.90 on July 26th, "for grading and paving bridge approach of Penn Avenue, West Reading," under the agreement mentioned in the twelfth finding of fact.

14. The paving for which the County of Berks paid, as mentioned in the thirteenth finding of fact, was the paving upon that part of the highway which was filled and macadamized by the bridge contractors, L. H. Focht & Son, and which in the contract for the bridge was designated as an approach to the bridge and extended along the entire frontage of defendant's property.

15. From the date of the completion of the contract for the building of the bridge, including the filling and macadamizing of the highway and the erection of the temporary retaining wall, the wooden pavement or boardwalk and curbing along defendant's property, used by pedestrians for access to the bridge, the County of Berks maintained the same and kept the same in repair, and defendant at no time was called upon to make any paving or to repair the same, although the borough authorities knew that at times the wooden pavement or sidewalk was dangerous and injuries had happened to pedestrians by reason of its defective condition.

16. By resolutions of the Borough Council of West Reading, both approved Oct. 9, 1922, it was resolved that the defendant be notified to lay curb and sidewalk and to erect retaining wall, coping and railing along sidewalk in front of his property on the southern side of Penn Avenue, at the western approach of the Penn Street bridge.

17. Said two resolutions, referred to in the sixteenth finding of fact, were passed pursuant to an agreement (Exhibit No. 8) between the County of Berks and the Borough of West Reading, dated Sept. 30, 1922, wherein it is recited that the sidewalk on the west side of the Penn Street bridge, at or about the western approach of said bridge, and on the southern side of the highway for a distance of 161 feet, more or less, has fallen into disrepair, that the owner of the property abutting on said sidewalk, the defendant herein, has failed to put said sidewalk in repair, and that a difference of opinion has arisen between the county and the borough as to which is the proper party to institute and conduct proceedings to pave and repair the sidewalk and collect the costs and expenses of the work from the owner, and wherein it is agreed (1) that the borough shall give notice to the owner to pave said sidewalk, beginning at the west end of the bridge and thence west for a distance of about 161 feet; (2) that if the owner fails to comply with the notice, the borough will do the work, file a lien therefor and attempt to collect; (3) that the work is to include, together with the actual paving, (a) grading and curbing, and (b) a retaining wall and balustrade, as and if the same may be necessary and proper; and (4) that if decided by the court that the owner is not liable to the borough for all or any portion of the costs and expenses, the county will, on demand, pay the borough therefor.

18. The floor and the concrete structure of the bridge end twenty-two feet east of the east line of defendant's property.

19. Shortly after the passage of the resolutions referred to in the sixteenth finding of fact, the Borough of West Reading gave the notice therein provided for. Notice was given under Ordinance of Sept. 3, 1907 (Exhibit D), provid-

ing for the making and maintaining of sidewalks and curbs in the Borough of West Reading.

20. Upon defendant's non-compliance with said notice, the Borough of West Reading entered into a contract under which the contractor removed the retaining wall, the wooden pavement or sidewalk and the curbing formerly erected by the County of Berks on what was formerly the defendant's property, and erected in their place a new retaining wall and railing, a new concrete sidewalk and new curbing along the entire front of defendant's property, the whole work taking up a width of approximately twelve and one-half feet, and extending a distance of about five feet from the building-line of Penn Avenue as it was before the approach to the new bridge was built by the County of Berks.

21. Whether the sidewalk and curbing along defendant's property immediately preceding the entry by the County of Berks and the construction of the western approach to the bridge complied with the borough regulations does not appear from the evidence.

22. Upon demand for payment of the costs of the construction by the borough, defendant refused to pay the same, whereupon the borough filed its claim for the cost thereof, with penalties, aggregating $3061.68.

23. Upon the trial, it was conceded that some of the work claimed for had been done upon premises not abutting property of the defendant, and it was agreed that, if there was any liability on the part of the defendant, he should have credits totaling $344.73.

*Conclusions of law.*

1. The retaining wall, coping, railing, paving and curbing erected by the Borough of West Reading, abutting the property of the defendant, were, upon the western approach of the county bridge, known as the Penn Street Bridge, and built by the County of Berks, under the contract mentioned in the first finding of fact.

2. The erection of the approach to the bridge was the erection of a necessary part of the bridge, and it was and is the duty of the County of Berks to construct, keep and maintain the said approach, both for pedestrian and vehicular traffic, in proper order and condition.

3. The Borough of West Reading had no authority in law to require the defendant to build the said retaining wall, coping, railing, paving and curbing, and cannot now collect from him for the work which it caused to be done upon his failure or refusal to comply with its notice to erect the same.

4. The lien in suit is not a valid lien.

5. The judgment of the court must be for the defendant.

The plaintiff's requests for conclusions of law are all refused. The second request we understand to mean that the viaduct consisted only of the concrete structure and that there was no approach thereto.

And now, to wit, Nov. 15, 1926, it is ordered that judgment be entered in favor of the defendant and against the plaintiff; this decree to be entered *nisi* according to law and notice thereof to be given forthwith by the prothonotary to the parties or their attorneys, and if no exceptions thereto are filed in the prothonotary's office within thirty days after service of such notice, judgment shall be entered thereon by the prothonotary.

From Charles K. Derr, Reading, Pa.